Washburn, J.
On tbe 17th day of June, 1851, Frederick Onstine was the owner of lands in Lot No. 3 in the township of Amherst, Lorain county, Ohio, upon which he then resided, and on that day he executed the following release or contract:
“From F. Onstine of Amherst, Lorain Co., O.; to the Junction Railroad Company. Know all men by these presents, that I, Frederick- Onstine, in consideration of three hundred dollars, hereby grant to the Junction Railroad Company, and its assigns, the right of using a strip of land, not exceeding one hundred feet *684 wide, on and over the lots described below, for a railroad; and the privilege of entering on said lots below described, to survey, construct and repair and use said railroad; and I hereby release to said company all damages which have or may accrue herein. The lots intended are the following, viz: Lot No. 3 in the township of Amherst, and being the farm on which I reside, and the twenty-eight acre lot joining Judge Harris’ land in said Amherst.
“In Witness of Which, I set my name and seal this 17th day of June, 1851.
“(Signed) Frederick Onstine.
“In presence of E. DeWitt.
“Received of E. DeWitt, treasurer of the Junction Railroad Company three hundred dollars, being in full for the within release. March 15, 1852.
“(Signed) Frederick Onstine.”
Said contract was not acknowledged before any officer and has never been recorded in the records of the county.
In pursuance of said writing the railway company named therein soon thereafter entered upon the land and constructed and has ever since operated its railway across the lands of said Frederick Onstine in Lot No. 3 in said township. Said contract or release, although it purported to “grant” the right-of-way to the railway company, did not operate to convey the right-of-way to the railway company for the reason that it was not executed and acknowledged as required by the laws then in force for the conveyance of real estate. But the subsequent construction and operation of the railway on such right-of-way in equity entitled said railway company to a conveyance of said right-of-way for railway purposes.
On November 26, 1853, Frederick Onstine conveyed to James F. Clark the premises through which said railroad had been constructed in Lot No. 3 and in that deed is the following, as a part of the description of the premises conveyed, tó-wit: reserving and excepting the land heretofore conveyed to the Junction Railroad Company.
On April 23d, 1857, James F. Clark deeded said land to Henry E. Werner. Said deed containing the following language, as a part of the description of the premises conveyed, to-wit: reserv *685 ing 'and excepting, however, the land heretofore conveyed to the Junction Railroad Company by Frederick Onstine.
' On September 7th, 1867, said Henry E. Werner conveyed said premises to the plaintiff, Joseph R. Miller; said last named deed containing no reservation in reference to or mention of said railway. .
Said railway was then in operation across this land and had been in operation for twelve years, and all the rights of said Junction Railroad Company have been succeeded to by the defendant railroad company; and said railroad has been in continuous operation across this land since 1852.
The plaintiff, Miller, knew when he purchased said land that the railway company was and had been for a number of years in possession of said right-of-way, using the same in the operation of its railway and claiming the right to so use it, and he was charged with constructive knowledge of and was bound by the reservations in reference to said right-of-way contained in the d’eéds of his predecessors in title. Under such circumstances, as against Miller, the plaintiff, the railway company was the owner of such right-of-way (41 O. S., 382).
Neither is it true, as claimed by the plaintiff, that the legal title is in him'. No one conveyed this legal title to him who ever had the legal title. Frederick Onstine, the common source of title, never attempted to convey this right-of-way except ás he attempted to convey it to the railway company, and in his deed to Miller’s predecessor in title he expressly excepts and reserves the right-of-way from the operation of his conveyance. Hence, not even the legal title is in Miller. But if it was in Miller the railway company has that which for all railway purposes is the same as the fee simple title — that is all the railway company can acquire, even by condemnation proceedings' or purchase — the right to use the property for railway purposes.
The dwelling house of Miller upon said premises was situated north of and close to the railway right-of-way, Miller owning the land both sides of the railroad, using a farm crossing to get from his dwelling to the highway bn the south.
In 1879 the railway company purchased of Miller a strip of land for additional, right-of-way on the south side of the origi *686 nal right-of-way, and in the deed which Miller executed and delivered to the railway company of such additional right-of-way and by which Miller recognized' the railway company as the owner of said original right-of-way, was the following provision:
“It is also stipulated and agreed between the parties hereto as a part-of the-consideration for this conveyance * * * Second, that there shall be no tracks north of the present tracks in front of Miller’s house while said house is occupied as a dwelling except as may be necessary in the work of excavation for the change of grade. * * * Sixth, that the sod on the right-of-way between Miller’s house and the tracks shall not be removed by said company except as much as may be necessary in excavating for the change of grade and after the same is completed said company shall restore the cut to uniform slope and leave the banks in as good condition as may be, considering the nature of the work done.”
Said conditions or restrictions do not relate to the property conveyed by the deed in which they are found, but to the use to be made by the railroad company of its original right-of-way north of its tracks and between its north track and Miller’s house. This action is brought to enjoin the defendant from constructing and using tracks upon that part of its original right-of-way mentioned above.
The defendant admits its intention to do so unless, prevented by the court, and by proof has satisfied the court that to properly discharge its duty to the public it is necessary to use for trackage purposes that part of this original right-of-way which it' agreed by accepting said deed not to so use. The question for determination is, should a court of equity enjoin the defendant from so using its right-of-way or leave the plaintiff to his remedy for damages for the breach of said contract?
It is well settled that-where’a railway company is about to take an easement or interest in land, the property of another, a court of- equity-will enjoin it from taking such property until it- has acquired-the right-to do so either by condemnation proceedings or purchase from the owner, for the reason that the ’Constitution of the state provides that such property can not be taken without 'first- making .compensation therefor.
*687 It is equally well settled that equity will not enjoin the breach of'a contract where there is an adequate remedy in damages for such a breach.
If the contract here in question granted to the plaintiff, Miller, an easement or property right in the original right-of-way of the defendant company, then the defendant is about to take the plaintiff’s property and it should be enjoined from doing so until it has acquired the property by condemnation proceedings or purchase from Mr. Miller. If the plaintiff, Miller, did not acquire an easement or property right by said contract, then he has an adequate remedy in damages for a breach of said contract and no injunction should be granted.
■ ■ It should be remembered that this agreement, so far as this case is concerned, did not refer to the use to be made of the land conveyed by the deed containing the agreement, nor did it refer to the use to be made of any land of the grantor named in the deed; consequently no easement or right in the property conveyed was reserved, that is, no easement or property right was created by reservation. If the plaintiff, Miller, acquired an easement or. right in the original right-of-way of the defendant which was not the subject of the conveyance he did so by virtue of.an agreement, and the fact that the• agreement is a part of the deed does not- affect the question of the creation of such easement or right.
An easement or right in real property can be acquired by prescription, reservation in a deed, or by grant or agreement. That no such easement or right was created by prescription or reservation is apparent in this case; consequently the claim of plaintiff is based upon the agreement contained in said deed.
Did said agreement create an easement in the right-of-way of the defendant? The statute then and now in force (8620, General Code) provides that:
“No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in or out of lands, tenements or hereditaments, shall be assigned, or granted except by deed or note in writing, signed by the parties so assigning and granting the same.”
*688 The agreement in question was not signed by the railway company, and hence it did not convey to the plaintiff an easement or interest or property right in the right-of-way of the defendant (79 O. S., 124; 17 Supreme Court Rep., 147, last paragraph of opinion on page 154; see also as bearing somewhat on these principles 72 O. S., 272, and 79 O. S., 279).
I doubt very much whether this agreement was for land or an interest in land so that if it had been signed by the defendant it would have conveyed any interest in the land to Mr. Miller. (See oh this phase of the case, 6 Ohio Circuit Decisions, page 43.) But if it was for an interest in land it was not executed so as to convey any interest in the right-of-way.
The language contained in the deed in question in this case amounted to simply an agreement by the defendant for a valuable consideration not to use a certain part of its property in a certain way and the remedy for a breach of such an agreement is a suit for damages, which appears to the court to be adequate.
It follows that plaintiff’s petition, which seeks to enjoin a breach of said contract, should be dismissed. It is unnecessary to pass upon the claim of 'the defendant that said agreement is void for the reason that it is against public policy to permit a railway company to contract with an individual that it will not use its'property to serve the public when the public demands such service.